IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PEOPLEFLO MANUFACTURING, INC.,** **Plaintiff,** v. **SUNDYNE, LLC; DXP ENTERPRISES, INC.; and PUMPWORKS, LLC,** **Defendants,** | Case No. 1: 20-CV-03642 Honorable Manish S. Shah Magistrate Judge Young B. Kim |
| **PUMPWORKS, LLC,** **Counter-Plaintiff,** v. **PEOPLEFLO MANUFACTURING, INC.,** **Counter-Defendant.** | |

**PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

Plaintiff PeopleFlo Manufacturing, Inc. ("PeopleFlo") moves the Court, pursuant to Federal Rules of Civil Procedure 26, 34, and 37, for an order requiring Defendant Sundyne, LLC ("Sundyne") to produce documents relating to PeopleFlo's claims and Sundyne's alleged defenses.[1] In support of this motion, PeopleFlo states as follows.

---

[1] L.R. 37.2 Compliance: Despite PeopleFlo counsel's (Mr. Ruskusky) good faith efforts to resolve these matters through consultations via telephone and e-mails with Sundyne's counsel (Mr. Sheean), including telephone calls on May 14, 2025, June 9, 2025, and June 28, 2025, and emails on June 5, 2025, June 12, 2025, June 23, 2025, and June 28, 2025, the parties were unable to resolve these issues. *See* Exs. A-B. On June 23, Sundyne's counsel wrote that he was still checking with his client ("My client is looking at this") and apologized for the delay. Ex. B. On June 28, following further follow-ups from PeopleFlo's counsel, Sundyne stated that it would not produce the requested data or documents. This motion promptly follows.

**INTRODUCTION**

PeopleFlo brings this motion to compel the production of one focused category of documents that it needs in order to calculate its damages for Sundyne's breach of NDA and misappropriation of trade secrets—documents showing Sundyne's sales, including its costs, projections, forecasts, marketing, and market share, for its Kontro CSA Range (including any updates to this product line), which Sundyne introduced to the market on or about June 4, 2020. Dkt. 77, ¶ 139. The NDA provides that:

> [Sundyne] acknowledges that [PeopleFlo] and its licensors own and will remain the owners of all Intellectual Property Rights in or to the Confidential Information; acknowledges that [PeopleFlo] will own all Intellectual Property Rights in all material (including documents, drawings, designs, data, know how, software, databases, processes, inventions and discoveries) created or developed by Sundyne or Sundyne's Representatives in connection with or in the course of carrying out the relationship (***including any modifications or improvements made by [Sundyne] to the Confidential Information.***)

¶ 6 of Mutual Non-Disclosure Agreement (the "NDA") attached hereto as Exhibit C (emphasis added). The NDA provides that "all [] remedies [are] available at law or equity to the non-breaching party." *Id.* ¶ 10. "Confidential Information" is broadly defined as:

> any and all financial, technical, commercial or other information concerning the business and affairs of [PeopleFlo], including business plans, financial information, lists of customers, vendors or employees, marketing techniques, strategies and developments, computer software, methods of operation, and all notes, analyses, compilations, studies or other materials derivative of any of the foregoing … which has been or may hereafter be provided or show to [Sundyne] or any of its representatives, irrespective of the form of the communication, by [PeopleFlo] or by its Representatives.

*Id.* ¶ 1.

PeopleFlo served numerous requests that seek documents relating to its damage claims arising from Sundyne's sales activities associated with sealless pump products, including the Kontro CSA Range (RFP Nos. 16-17, 25, 32, 36, 61-62, 110-11, and 115). Sundyne produced some detail through parts of 2022 or 2023 but now refuses to supplement and/or produce the very

2

documents PeopleFlo requires to assess its damages resulting from Sundyne's breach of NDA and its separate claim for misappropriation of PeopleFlo's trade secrets.

Using the information and materials that it received from PeopleFlo in breach of the NDA, Sundyne estimated the value of the potential deal with PeopleFlo at $48 million. Dkt. 382 ¶¶ 14–15. Sundyne recognized that the information shared by PeopleFlo would address a large "gap" in its product line. Dkt. 362 at ¶¶ 9, 11, 16-18. As pled in the Complaint, rather than pay PeopleFlo to fill that gap, Sundyne breached the NDA and used the information itself to develop and now sell the CSA. Dkt. 77 ¶ 177-181.

PeopleFlo's expert requires this information so that he has a full and reasonable understanding of Sundyne's costs, market share projections, sales, and sales efforts pertaining to the Kontro CSA Range through the present relating to the consequences of Sundyne's breaches, including Sundyne's valuation from 2017 (when it first breached the NDA) to the present, and Sundyne's profits relating to the CSA which are subject to disgorgement for its breaches of the NDA. Documents regarding such damages are in Sundyne's control, and it should be ordered to produce them.[2] Sundyne has no proper basis to restrict its production considering that PeopleFlo's breach of NDA claim proceeds in full.

On May 1, 2025, Your Honor set a Rule 26(a)(2) disclosure deadline of July 18, 2025. Dkt. 453. Despite multiple meet and confer efforts since the entry of that order, Sundyne has refused to run searches for or produce responsive documents despite their relevance to PeopleFlo's damages. PeopleFlo's expert requires these documents in order to assess PeopleFlo's damages. Accordingly, this Court should order Sundyne to produce the requested documents. PeopleFlo requests that the

---

[2] Full disclosure of Sundyne's costs, sales, projections, and sales efforts pertaining to the Kontro CSA Range also are necessary if this matter is to resolve without trial.

order also permit PeopleFlo to produce its Rule 26(a)(2) disclosures within 21 days after Sundyne's supplemental production. Provided that Sundyne timely produces these materials, PeopleFlo does not anticipate the requested supplemental production and amended expert report deadline will prevent the parties from completing expert discovery by October 31, 2025. Dkt. 453. It also is more cost-efficient and reasonable to address these materials now rather than proceed with partial experts reports.

## FACTUAL BACKGROUND

This case arises from PeopleFlo's development of a groundbreaking sealless pump technology and its dealings with Defendants to bring the technology to market through a project called "Project Colorado." Dkt. 77 ¶¶ 18-20, 37, 41. PeopleFlo engaged in extensive discussions with Sundyne about Project Colorado. *Id.* ¶¶ 18-19. PeopleFlo disclosed confidential information about its sealless pump to Sundyne and Accudyne under the protection of two NDAs. *Id.* ¶¶ 21-26. PeopleFlo shared its commercial plans, market concept, and confidential information related to the design, including PeopleFlo's technology and strategy in deploying a lower cost and environmentally-friendly sealless pump. *Id.* ¶ 21. Per the NDAs, Sundyne agreed to safeguard the confidentiality of this information and not use it to PeopleFlo's detriment. *Id.* ¶¶ 25-28.

In March 2017, Sundyne representatives expressly confirmed that the Sealless Pump Technology represented a new product design for a new market segment that was not competitive with Sundyne's products.[3] *Id*. ¶ 32; *see id.* ¶¶ 20-21. In August 2017, PeopleFlo's CEO, Bill Blankemeier ("Blankemeier") met with Accudyne's VP of Strategy and Corporate Development, Peter Johansson ("Johansson"), and discussed the Project Colorado financial model, which valued

---

[3] Communications between Sundyne and DXP separately acknowledged that none of the Sundyne pump products that DXP distributes were or are competitive with the PWA-SL product line. *Id*. ¶¶ 42-47.

the Sealless Pump Technology at more than $20-$30 million. *Id*. ¶ 33-35, 56. In October 2017, Johansson and Sundyne's President, Mark Sefcik ("Sefcik") visited PeopleFlo's facility to evaluate PeopleFlo's manufacturing capabilities. Dkt. 77 ¶¶ 51-52. Sundyne recognized that PeopleFlo's disclosures under the NDA filled a large "gap" in its product offerings. Dkt. 362 at ¶¶ 9, 11, 16-18. Considering that gap that would be filled, Sundyne estimated the value of the potential deal with PeopleFlo at $48 million. Dkt.382 ¶¶ 14–15.

One month later, on November 16, 2017, Sundyne surprised PeopleFlo with the news that, although it believed in the technology, it was passing on the project. *Id.* ¶¶ 57-59. Despite telling PeopleFlo that it was passing, discovery has revealed that Sundyne instead proceeded to use PeopleFlo's confidential information to develop and now sell the CSA product line. *Id.*; Dkts. 71-1 through 71-3. This lawsuit seeks to address the consequences of Sundyne's breaches, including Sundyne's avoided costs (for its valuation – what it avoided paying to PeopleFlo) or alternatively disgorgement of Sundyne's profits as a consequence of its breaches.

## Relevant Procedural History

PeopleFlo's breach of contract claim against Sundyne and Accudyne will proceed to trial in full. Defendants' Motion for Summary Judgment on this NDA claim was denied. Judge Shah also denied Sundyne's Motion for Summary Judgment as to PeopleFlo's separate trade secret misappropriation claim to the extent it relies on PeopleFlo's bearings design. Your Honor entered an order setting forth the expert discovery schedule, which includes a deadline of July 18, 2025, for the parties to serve Rule 26(a)(2) disclosures on issues for which they have the burden of proof. Dkt. 453.

**ARGUMENT AND LEGAL STANDARD**

FRCP 26(b)(1) allows the parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." A party may move to compel discovery where another party fails to respond to a discovery request or where the response is evasive or incomplete. FED. R .CIV. P. 37(a)(3)-(4). "In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Courts "look unfavorably upon significant restrictions placed upon the discovery process," and the "burden rests upon the objecting party to show why a particular discovery request is improper." *Id.* "The law is well settled that information regarding damages is discoverable[.]" *Caruso v. Coleman Co.*, 157 F.R.D. 344, 348 (E.D. Pa. 1994); *see also Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 694 (1933) ("damages may be proved with the aid of a discovery").

**I. Sundyne should be compelled to produce discovery relating to establishing PeopleFlo's damages (Req. Nos. 16-17, 25, 32, 36-41, 61-62, 110-111 and 115.)**

Sundyne has objected and refused to produce discovery on its sales, revenue and market associated with the Kontro CSA Range that are the subject of PeopleFlo's breach of NDA claim, which allow for consequential and expectation damages (including damages relating to Sundyne's valuation and disgorgement of Sundyne's profits) or, alternatively for its distinct trade secret claim, a reasonable royalty or unjust enrichment.

*First*, in Requests 16-17, 25, 32, and 61-62, PeopleFlo sought documents relating to Sundyne's distribution and sales activities, profit or revenue forecasting, and evaluations and projections associated with sealless pump products, including the Kontro CSA Range. Ex. D. Sundyne objected to the Requests based on various boilerplate objections. *Id.* These Requests are highly relevant to PeopleFlo's damages for Sundyne's breach of the NDA and separately

Sundyne's misappropriation. Information about Sundyne's costs, evaluations and sales in the sealless pump market also are relevant to PeopleFlo's assessment of its damages as Defendants have effectively foreclosed PeopleFlo from the sealless pump markets in the United States. Dkt. 77 ¶ 4. This covers all CSA sales. After all, PeopleFlo seeks sales information related to the Kontro CSA Range because, as set forth *infra*, Sundyne's profits on the Kontro CSA Range are subject to disgorgement because Sundyne used information provided by PeopleFlo under the NDA to fill the large "gap" in its product line including the manufacturing of the Kontro CSA Range, including any improvements or modifications thereto. Sundyne's sales to date and future forecasts and projections are squarely relevant to address these damages generally and considering the broad coverage of Confidential Information in the NDA.

*Second,* in Requests 36-41, PeopleFlo sought information regarding Sundyne's market share in the United States and its market power relative to its competitors. Sundyne objected to the requests as overly broad, not calculated to lead to admissible evidence, vague, and irrelevant. Ex. D, at Req. Nos. 36-41. This discovery is directly relevant to PeopleFlo's damages resulting from Sundyne's breach of the NDA. Sundyne itself acknowledged the gap that would be filled by PeopleFlo's confidential information and technology disclosed under the NDA. PeopleFlo, its expert and the jury are entitled to know how Sundyne has filled that gap including its market share.

Separately, for PeopleFlo's misappropriation claim, it is fair and reasonable for PeopleFlo to obtain discovery on the scope of Sundyne's Kontro CSA Range sales in order to evaluate whether PeopleFlo's bushings elements are marketed and involved in other Kontro CSA Range sales. Sundyne touted them in filling the gap and in other early marketing materials by way of example.

*Third*, in Requests 110-111 and 115, PeopleFlo sought information regarding financial projections or considerations and analysis of Sundyne's modeling tool relating to a potential transaction between Sundyne and PeopleFlo. Ex. E. To the extent such financial projections or considerations relate to Sundyne's Kontro CSA Range, they will provide further information regarding PeopleFlo's resultant damages.

As noted above, each aspect of this discovery will address PeopleFlo's damages claim based on Defendants' breach of contract. Establishing compensatory or expectation damages will include an examination of the market for the product that is the subject of the claim, including through evidence of sales that defendants claim come from a competing product. *Fishman v. Estate of Wirtz*, 807 F.2d 520, 551 (7th Cir. 1986) ("a 'yardstick' measure of damages, that is, linking the plaintiff's experience in a hypothetical free market to the experience of a comparable firm in an actual free market, is also well accepted.") Here, after receiving and reviewing PeopleFlo's confidential information under the NDA, Sundyne recognized that it filled a large gap in its own product lines which Sundyne valued at $48 million. Instead of paying PeopleFlo (what it expected), Sundyne misused this information to develop and now sell the CSA. As a consequence, Sundyne avoid paying PeopleFlo and reaped profits for itself. PeopleFlo, its expert, and the jury are entitled to know what Sundyne has received thus far – and what Sundyne projects to receive to fill its own acknowledged gap including costs, market share, projections and sales.

Contract damages also may come in the form of disgorgement of Sundyne's profits for its breach of the NDA. *Avery v. State Farm Mut. Auto. Ins. Co.*, 321 Ill. App. 3d 269 (2001) (disgorgement of profits for breach of contract is a proper remedy when there is no adequate remedy at law and legal damages would enable the breaching party to profit from his conduct); s*ee also* Restatement (Third) of Restitution and Unjust Enrichment § 39(1) (2010) (a court may

8

award disgorgement in certain cases in which "a deliberate breach of contract results in profit to the defaulting promisor"); *Malatesta v. Leichter*, 186 Ill. App. 3d 602, 622 (1989) (affirming lost profits despite "differences between [the third party's] and plaintiff's experience, name recognition, access to employees and many potential differences in their operation of the business"); *Euroholdings Capital & Inv. Corp. v. Harris Tr. & Sav. Bank*, 602 F. Supp. 2d 928, 936-38 (N.D. Ill. 2009) (allowing expert testimony regarding lost profits based on comparator business performance). Likewise, PeopleFlo may be entitled to consequential damages due to PeopleFlo's expectation that Sundyne would perform under the NDA and not breach it. *In re: Emerald Casino, Inc.*, 867 F.3d at 757; 1472 N. Milwaukee, Ltd., 2013 IL App. (consequential damages that are the consequence of special or unusual circumstances are recoverable when they are within the contemplation of the parties); *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 59 F. Supp. 3d 865, 882 (N.D. Ill. 2014) (a Plaintiff must show only that the alleged consequential damages were reasonably foreseeable).

Separately, under the ITSA, damages for trade secret misappropriation may include lost profits, including unjust enrichment, or, alternatively, a reasonable royalty for the unauthorized use of a trade secret. 765 ILCS 1065/4; *Goldberg v. Medtronic, Inc.*, 686 F.2d 1219, 1229 (7th Cir. 1982). In this case, actual losses can be computed by reference to sales unlawfully obtained by Sundyne from the misappropriation of PeopleFlo's trade secrets, which PeopleFlo has identified as incorporated into at least the Kontro CSA product line. Dkt. 77, ¶¶ 142-143. Likewise, a reasonable royalty may be based on the sales and/or profits of the technology that has been marketed based on or incorporated PeopleFlo's trade secrets. *Goldberg*, 686 F.2d at 1228-29. This covers all sales of the CSA considering Sundyne's marketing of its bushing feature from the outset.

In sum, PeopleFlo's request for documents and information regarding sales and profits that Sundyne has made on the Kontro CSA product line are directly relevant to establishing these damages. Data regarding sales and profits relating to Sundyne's breach of the NDAs and misappropriation of trade secrets will be the subject of expert testimony as to the value added by PeopleFlo's technology, including substantial cost savings. Dkt. 77, ¶¶ 5, 21, 132, 137; *see Goldberg*, 686 F.2d at 1228-29 (calculating reasonable royalty by apportioning plaintiff's protected contributions to the gross profits of the defendant's product).

## CONCLUSION

**FOR THESE REASONS**, either independently or in combination, Plaintiff PeopleFlo Manufacturing, Inc. respectfully requests that the Court to enter an order:

(a) compelling Defendant Sundyne LLC's production of documents related to the sales and distribution of Sundyne's Kontro CSA product (Req. Nos. 16-17, 25, 32, 36, 61-62, 110-11, and 115);

(b) permitting PeopleFlo to produce its Rule 26(a)(2) disclosures within 21 days of Sundyne's supplemental production; and

(c) granting any other relief the Court deems just and equitable.

Dated: July 3, 2025

Respectfully submitted,

/s/ John T. Ruskusky
One of the Attorneys for Peopleflo Manufacturing, Inc.

John T. Ruskusky
(jtruskusky@nixonpeabody.com)
**Nixon Peabody LLP**
70 West Madison Street, Suite 5200
Chicago, IL 60602
Telephone: (312) 977-4400
Facsimile: (312) 977-4405

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 3, 2025, he served a copy of the foregoing on all counsel of record via electronic case filing procedures.

/s/ John T. Ruskusky
Counsel for PeopleFlo, Manufacturing, Inc.
