IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PEOPLEFLO MANUFACTURING, INC.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **SUNDYNE, LLC; DXP ENTERPRISES, INC.; and PUMPWORKS, LLC,** <br><br> **Defendants,** | Case No. 1:20-cv-03642 <br><br> Honorable Manish S. Shah <br><br> Magistrate Judge Young B. Kim |
| **PUMPWORKS, LLC,** <br><br> **Counter-Plaintiff,** <br><br> v. <br><br> **PEOPLEFLO MANUFACTURING, INC.,** <br><br> **Counter-Defendant.** | |

**MEMORANDUM IN SUPPORT OF PUMPWORKS LLC'S PROVE UP OF DAMAGES**

  PumpWorks LLC ("PumpWorks") requests that judgment be entered against PeopleFlo Manufacturing, Inc. ("PeopleFlo") following this Court's ruling on the parties' cross motions for summary judgement wherein, this Court found that PeopleFlo breached the Development and Supply Agreement of March 21, 2018 (the "DSA") (Memorandum and Opinion Order, Dkt. # 446 p. 74). The Court instructed PumpWorks to make an election of remedies: money damages or the transfer of a know-how license as provided in Sec. 3 of the DSA. *Id* at 76. PumpWorks has made its election and seeks a damage award of $690,203.90 representing the difference between the moneys it paid to PeopleFlo and the value of all shipments of Magnetic Coupling Units ("MCUs"), the items covered by the DSA, and for miscellaneous equipment received from

1

PeopleFlo. PumpWorks further asks that it be awarded pre-judgment interest at 5% per annum from May 1, 2020 to the entry of the judgment.

The accounts payable records of PumpWorks, (Ex. 16A) as verified by Stephen Wick, the controller (see Ex. 16E), makes it abundantly clear that PumpWorks paid PeopleFlo $1,197,454.40 from the inception of the DSA. What appears to be in dispute is how much PeopleFlo is allowed to offset against these payments. In its summary judgment decision, this Court disposed of PeopleFlo's alleged damage claims for excess inventory, labor and out of pocket costs. Dkt. # 446 at 72. To date PeopleFlo has not identified any other source of setoff or any invoice for which PumpWorks has not accounted. Therefore, in making its request for judgment, PumpWorks has given credit for the value of each piece of equipment it received as shown in a PeopleFlo invoice or packing slip produced by either party in discovery. Exs. 2, 3, 4 and 5. Based on these documents, PumpWorks admits a set off in the amount of $507,250.50.

The ultimate calculation of damages is simple. Nonetheless, the parties have created a number of charts matching the very granular information in invoices, packing slips and payment records in part, because the charts were useful in tracking information during the relationship. They serve here to show how much agreement already exists as to the damage calculation. A vice president of PeopleFlo was the first to generate a chart matching shipments, invoices and payments through January 3, 2020. Ex. 6. PumpWorks merely completed this work through the end of the parties' dealings in April 2020. Ex. 15A. As PeopleFlo has not admitted receipt of any payments after January 3, 2020, PumpWorks has had all payments that were shown in the previously produced account payable ERP report (Ex. 16A) verified by its controller (Ex. 16E). The Master Chart (Ex. 17) is a single source that compiles reference numbers to all source information and cross references the work done by PeopleFlo and PumpWorks including the

verification of payments. Unless PeopleFlo has documents that were not produced or a set off theory not yet presented, there should be no areas of legitimate dispute about what is owed to PumpWorks.

I. **Evidence Supporting PumpWorks Damage Analysis**

 1. **PeopleFlo Invoices and Packing Slips**

PeopleFlo created packing slips to "go with shipments" and these slips reference the purchase order against which shipments were made.[1] Ex. 12, excerpts from Blankemeier Dep. 6/24/2022 at 194-196 (discussing the packing slips used as deposition exhibits 248, 249 and 250 found at Exs. 7, 8 and 9 to this prove up). For pre-payment orders, these slips also show the quantity of each model of MCU shipped against a standing purchase order and the number of units required to complete the order. *Id.* and Ex. 11, Shafer Dep. at 144. Invoices for miscellaneous items identify the equipment being shipped. PeopleFlo kept copies of packing slips in a folder on its main directory (Ex. 11, Shafer Dep. at 144-45) and Shafer believes that PumpWorks should have copies of all the packing slips because "they were sent with every shipment." *Id.* at 145. PumpWorks has produced a copy of those packing slips it found covering each shipment received from PeopleFlo. Exhibit 4. Exhibit 5 contains a copy of a packing slip for each shipment as produced by PeopleFlo in discovery. These packing slips in Exs. 4 and 5 are identical in format and contain the same information as was discussed in the depositions of PeopleFlo's officers concerning deposition exhibits 248, 249 and 250. See Exs. 7, 8, and 9.

Similarly, PeopleFlo issued invoices to PumpWorks following each of the shipments. Ex. 12, Blankemeier Dep. at 190. Invoices for pre-payments have no corresponding shipment

---

[1] Where a shipment contained MCUs or equipment related to more than one purchase order, PeopleFlo usually created more than one packing slip so as to correctly reference the shipment to the purchase order. Ex. 11, Shafer Dep. at 142.

3

information. *Id*. Invoices sent with respect to a shipment of MCUs billed PumpWorks at the percentage of "whatever is left from the prepayment.". *Id*. and Ex.11, Shafer Dep. at 137 (discussing the invoice information on his chart and explaining how some invoices reflect the percentage of purchase price that had been pre-paid.) Invoices for miscellaneous equipment for which no prepayment was made were billed at full price. PumpWorks used invoices to create vouchers and to record payment obligations in its ERP system. Ex. 16A. Exhibit 2 contains one copy of each invoice that PumpWorks received from PeopleFlo and Exhibit 3 shows one copy of each of the invoices PeopleFlo produced in discovery.

      PeopleFlo has stipulated to the authenticity of the invoices and packing slips found in Exs. 2, 3, 4 and 5. Except where there were obvious mistakes, such as internal inconsistencies in the packing slip or invoice, each company treated these documents as accurate recordings of the information they contained and conducted their business accordingly. Mr. Shafer used information contained in these documents, either directly or through information recorded in QuickBooks, to prepare his invoice analysis (Ex. 6). These documents are business records of PeopleFlo. Further, except as noted on the Giessing Accounting or the Master Chart, discussed in detail below, PumpWorks has treated the information in these documents as an admission against its interest in calculating the value of MCUs and equipment which should be set off against the amounts that PeopleFlo owes to PumpWorks.

      **2. The Shafer Chart**

      On January 3, 2020, Clark Shafer, a vice president of PeopleFlo (Ex. 11, Shafer Dep. at 10) and the lead person on the PumpWorks account (Ex. 12, Blankemeier Dep. at 41) prepared the Shafer Chart under instructions from Blankemeier, PeopleFlo's president. See Ex. 6, Emails accompanying the Shafer Chart. According to Shafer, "…this was a summary of open invoices. It

was really, I believe, a summary of all invoices open and closed that had been –that had been executed between the two companies." Ex. 11, Shafer Dep. at 135. He admitted that the data in the Shafer Chart was current as of the beginning of January 2020. *Id*. To create his chart, Shafer used PeopleFlo data, particularly the packing slips which were stored on servers or the company's QuickBooks records. *Id*. at 135-6.

Shafer grouped entries on his chart under the PumpWorks' DSA purchase orders. These purchase orders are referenced above each of the first four groupings in his chart. *Id* at 136. For example, entries in the first grouping (lines 2 through 22) relate to the 4744 purchase order. Ex. 6 i, Shafer Chart printed with line numbers (reference information above the first grouping).[2] The next group of entries (Ex. 6i, reprint of Shafer Chart, lines 24 through 33) are headed with the information contained in purchase order 5263. See Ex. 15C. The next two groupings both relate to purchase order 7024, but are segregated into information related to LT (low torque) MCUs (*id*. at lines 35 through 44) and HT (high torque) MCUs (*id.* at lines 46 through 56) because these items have different unit prices. See Ex. 15D. As a result, Mr. Shafer repeats invoice numbers between these groupings on his chart with the correct quantity noted in the LT or HT groupings. *Id.* Group 3 (lines 35 through 37) and group 4 (lines 46 through 48) and Ex. 11, Shafer Dep. at 139-140 (discussing the information shown as to stock purchase orders). The remainder of the chart are non-stock or miscellaneous orders. *Id*. at 140-141.

The Shafer Chart is largely self-explanatory. The column headings show the "date" of the "event" (prepay invoice or shipment), the "invoice number", the "quantity" of MCUs or pieces of equipment involved, the "%" of the full price of the goods as reflected in the invoice, the

---

[2] This header information in the Shafer Chart is the same as the information recorded in the unsigned purchase order attached as Exs. 15B, 15C and 15D which were previously used as exhibits D, E, and F to the Giessing Declaration. See Dkts. 356, 356-4, 356-5, and 356-6.

dollar "value" of this percent, the "paid $" amount received from PumpWorks, the "pay date" of that remittance and any "balance" remaining. The "qty" column cannot be added to determine how many items were shipped because the invoices for pre-payments do not reflect shipments. Ex. 6i. For example, Shafer described the event recorded on 4/5/2018 (on line 6), as an invoice for a 50% prepayment. Ex. 11, Shafer Dep. at 137 and Ex. 6. This event references 100 units because the pre-payment covered all MCUs ordered in the first purchase order, not because 100 units were shipped. "So they paid us $165,000, which was 50 percent of the total value." Ex. 11 Shafer Dep. at 137. Similarly, the entry at 2/11/2019 (line 13) is another prepayment PumpWorks made for 40% of the MCU value, but it only covers 77 units because at that time, 23 MCUs had already shipped. Ex. 11, Shafer Dep. at 138-139 (discussing quantity listed in line 13 of the chart). Again, 77 units were not shipped. The ship events have invoices for the number of MCUs billed at 50% or 10% because these deducted the applicable pre-payment. *Id.* at 138. See also Ex. 12, Blankemeier Dep. at 190. The shaded lines on the Shafer Chart, as well as the $0 balances represent paid invoices. Ex.11, Shafer Dep. at 136.

 Comparing the Shafer Chart to the source documents he references, his work is correct with only one exception. At line 100, he references a value of $4,290 for which the corresponding invoice is only for $2,970, the same as the number reflected in the header information at lines 95-97 of the chart. See Ex. 6i. For purposes of adding the value of this shipment, the correct number which Shafer recorded in the header of his chart has been used and not the erroneous values he reported in values and balance columns.

  3. **Admissions Made by PeopleFlo as to Payments Received**

 In addition to testifying that PeopleFlo received the initial prepayment of $165,000 even before PeopleFlo sent an invoice, (Ex. 11, Shafer Dep. at 137) the Shafer Chart shows receipt of

6

$101,640 on 2/11/2019 (Ex. 6i at line 6), $198,000 on 7/6/2018 (*id.* at line 28), $158,400 on 2/11/2019 (*id.* at line 29), $283,800 on 5/24/2019 (*id.* at lines 38 and 50) and $227,040 on 8/20/2019 (*id.* at lines 40 and 51). In the Shafer Chart, PeopleFlo admits receiving pre-payments totaling $1,133,880.

This is consistent with PeopleFlo's admissions as found in Plaintiff PeopleFlo Manufacturing, Inc.'s Responses to Defendant PumpWorks LLC's Statement of Additional Undisputed Facts in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment Response 5 at p. 14-16, Dkt. # 391 where PeopleFlo admits receipt of each of the prepayments made by PumpWorks totaling $1,133,880. Ex.14.

In addition, the Shafer Chart admits receipt of $23,450 in payments for DSA purchase orders and $10,900 in payments for miscellaneous items that occurred before January 3, 2020.

On more than one occasion, Mr. Blankemeier has admitted that PeopleFlo owes PumpWorks "around $700,000." Ex.13, Blankemeier Dep. at 21. This admission is repeated in PeopleFlo's summary judgment filings: "PeopleFlo admits that it has retained approximately $700,000 in prepayments for MCU's …." Ex. 14 at 19.

As for open invoices, Mr. Blankemeier has admitted that he is aware of only 22 open invoices totaling $69,997 as of April of 2020. See Ex. 10, deposition exhibit 562 and Ex. 13, Blankemeier (30(b)(6) Dep. at 19-20 (discussing deposition exhibit 562). When asked if the chart in deposition exhibit 562 is a complete list of outstanding invoices he answers: "I believe so" and he stated that he is not aware of any other outstanding invoices. *Id.* All of these invoices are treated in the Giessing Accounting (discussed below). Ex. 15A. It should be noted that the entry for Invoice 1012 for $10,560 is not for shipments of equipment, but is a request for an additional

7

prepayment and is therefore valued at zero for setoff purposes because if this invoice had been paid, it would have increased the amount of PumpWorks damage claims by the same amount.

### 4. The Giessing Accounting

For the summary judgment motion Mr. Giessing supervised the preparation of an accounting that started with the Shafer Chart and used the same type of source of information, *i.e.* invoices and shipping slips. He also included the PumpWorks account payable data (the ERP report) to complete the work through the end of the relationship. Ex. 15A.

The ERP report was produced in this case. Ex. 16A. It is a printout of the accounts payable system used by PumpWorks at the time of the DSA transactions. The report was created at the direction of Stephen Wick, the controller of DXP Enterprises, of which PumpWorks is now a part, and Wick's staff. Ex. 16, Wick Declaration at ¶¶ 2 and 3. Mr. Wick had this report prepared because Mr. Giessing asked for the company records showing all payments to PeopleFlo. *Id.* Mr. Wick has noted that the ERP report is cumbersome in that, among other things, it does not have a good way to record pre-payments. *Id.* at 4. Nonetheless, in reviewing this report, the only error he noted was that the initial payment of $165,000 (which PeopleFlo has several times admitted it received) was zeroed out by an operator's entry. *Id.* In total, the ERP report shows payments from PumpWorks to PeopleFlo in the amount of $1,197,454.40. *Id.* at ¶ 5.

In preparing the Giessing Accounting, Mr. Giessing "summarized all known orders, invoices, payments and shipping records for the 400 MCUs that PumpWorks ordered." Ex. 15, Excerpts from the Giessing Declaration Dkt. # 350 at ¶ 30. His summary cites the supporting documents by DXP-PW bates number for each entry. *Id*. See also Exs. 2, 4, 6i and 16Ai. Mr. Giessing grouped invoices, payments, and shipments in the same manner as the Shafer Chart

with the exception that the third grouping in Ex. 15Ai combines LT and HT MCUs related to purchase order 7024. See 15Ai at lines 43-51. This is followed by two groupings in which the same information is divided by the entries for LT and HT MCUs. This is for ease of calculation[3] and for easier comparison to the Shafer Chart and is not meant to be cumulative of the entries in group 3.

The Giessing Accounting has heading information identifying the purchase order, total quantity ordered, unit price, total value of the purchase order, amount paid with respect to this purchase order, the shipment balance which is the amount of open invoices, value of the purchase order to completion, the number of units shipped and cost of these units. See Ex. 15Ai. The columns show "date" of the "event" (invoice or shipment) "invoice" number; the bates number of the invoice; the "qty" of the units related to the event; the "%" or the total value of the MCUs reflected in the invoice; the "paid $"; and "pay date" and "balance". The eleventh column shows the bates number of the ERP and gives the line on that report where the payment was recorded; column twelve is the bates number of the packing slip followed by a date column. Ex. 15, Excerpts from the Giessing Declaration at ¶¶ 27-37 (explaining the purchase orders and prepayments, and the preparation of Ex. C (that is now Ex. 15A to this prove up).

Mr. Giessing noted that the 12/18/2018 shipment contained one unit that was not part of the DSA purchase order. Ex. 15Ai at line 14. He did not count this unit in recording how many units were shipped under purchase order 4744, but gave PeopleFlo credit for the value of this unit as part of the cumulative miscellaneous shipments. Ex. 15 Giessing Declaration at ¶¶ 37 n.

---

[3] For determining the value of MCUs received under the three stock purchase orders, it is easier to count the units shipped and multiply that number by the unit price (as found in the DSA (Ex. 1) and the purchase orders (Exs. 15B, C and D) without regard to what % of value is being invoiced.

4). He also correctly reported 1 unit in the 2/27/2020 entry for $1192.50 as is shown in the source invoice. See 15Ai at line 152 and Ex. 2, invoice 1025.

In his declaration starting at paragraph 27, Mr. Giessing identifies each of the purchase orders and each of the prepayments made by PumpWorks. He then explains the Giessing Accounting and his methodology following the work of Clark Shafer. Ex. 15, Giessing Declaration ¶ 37. He reports the total amount paid as $1,168,972.40 (instead of $1,197,454.40 as shown in the ERP) because he did not include small invoices that were fully paid as these would not change the calculation of the overpayments given that PumpWorks received value for these small payments. *Id*. at n. 3. As previously noted, in the statement of facts based on this testimony of Mr. Giessing, PeopleFlo has objected to the copies of the purchase orders as being "unsigned", but admits the essential information including its receipt of each purchase order for the type and quantity of MCUs at the price shown on Mr. Giessings' exhibits. See Ex. 14 at pp 14-16.

The Giessing Accounting gave credit for three invoices found only in the PumpWorks production (Ex. 15Ai lines15, 28 and 57) and four invoices found only in the PeopleFlo production (*id.* at lines 35, 140, 146 and 152). Invoices were used to give credit even when there was no corresponding shipping slip or where the packing slip was found in only one party's production. *Id.* at lines 24, 27, 101, 108, 127.

10

The Giessing Accounting shows that the resulting overpayment by PumpWorks is $690,203.990.[4]

### 5. The Wick Verification

Stephen Wick, the Controller of DXP Enterprises, Inc. (which now includes PumpWorks) has submitted a declaration in which he testifies that in total, PumpWorks paid PeopleFlo $1,197,454.40. Ex. 16, Wick Declaration ¶ 10. He bases this testimony on his review of the report from the PumpWorks ERP account payable system (Ex. 16A) which he provided to Mr. Giessing for the preparation of the Giessing Accounting. Ex. 16, Wick Declaration ¶ 3. As the company is now migrating to a different account payable system and because there are no longer employees with a high level of expertise in the ERP system, in preparing to testify to the payments made by PumpWorks to PeopleFlo, he undertook his own review of company records and produced the Wick Verification. Ex. 16E and Ex. 16, Wick Declaration ¶ 6. He used the Shafer Chart (Ex. 6), the Giessing Accounting (Ex. 15A), the ERP report (Ex. 16A) and matched this information to information pulled from bank statements (Ex. 16B), wire transfer confirmations (Ex. 16C) and a check (Ex. 16D) found in the company's positive pay file which is used by the company for daily checks.[5] All of these records are maintained by the company

---

[4] PeopleFlo previously objected to Giessing's assertion of the amount owed as requiring "expert" testimony. Presumably PeopleFlo objected because Mr. Giessing was not qualified to comment on PeopleFlo's claims for damages under the breaches of the DSA it had alleged against PumpWorks. The summary judgement memorandum and opinion has dispensed with PeopleFlo's damage claims and the parties have since agreed and told the Court that expert testimony is not needed to account for the overpayments. Dkt. # 452 There is nothing in the record to suggest that Mr. Giessing is not qualified to testify to the accounting of invoices, packing slips and payment data contained in the Giessing Accounting.

[5] The ERP report and wire transfer documents have been produced in discovery and relevant ERO entries are recorded in the Master Chart. Unredacted copies of bank statements are available for the Court or counsel for PeopleFlo to review, but redacted copies are submitted with this prove-up to protect against unrelated sensitive financial information being publicly disclosed.

under his supervision and are used by him to create among other things, the financial reports requested by the company.

All information in columns A-K in the Wick Verification are taken from the Shafer Chart and the Giessing Accounting. Ex. 16, Wick Declaration ¶ 8. Bank records and the ERP frequently accumulate a number of invoices related to one payment entry. To match invoices to payments he grouped the payments starting with the oldest. *Id.* Column H shows the invoices or vouchers which were paid together by the one bank transfer. Column L shows the type of payment (ach, wire or check) and the "Rolling $$" shows the addition of invoice amounts that ultimately add up to the payment in the bank statement or positive pay file under "support." *Id*. While matching the payments with the invoices is not necessary to verify the total amount paid, this effort does help tie all payments to the previously produced documents and the work of Mr. Shafer and Mr. Giessing. *Id*.

Mr. Wick testifies that in total, PumpWorks paid PeopleFlo $1,197,454.40. *Id*. at ¶ 9. It is from this number that any allowable offsets should be deducted to arrive at PumpWorks' damage claim. Mr. Wick does not testify as to the accuracy of the shipment records or the value of offsets which Mr. Giessing Accounting accepted as true for purposes of his work.

**6. The Master Chart**

The Master Chart is the work of the attorneys and legal staff and adds no new information to the damage analysis except to record additional bates numbers for source documents and cross referencing the line entries in the Shafer Chart, the Giessing Accounting, the ERP report and the Wick Verification. The entries which are not admitted by PeopleFlo are not known to be in dispute as they relate to transactions that occurred after the date that Mr. Shafer completed his chart.

The columns have the same meaning as those in the Giessing Accounting with the following additions. "ERP Payment Records Line #s" shows pinpoint references to the ERP followed by a "()" which is the line reference to the Wick Verification. Where available, both the DXP-PW and the PeopleFlo bates numbers are given for the invoices and packing slips. Note, payments made after January 3, 2020 may be reflected as open on the Shafer report (denoted by a †) even though there are payment records in the Giessing Accounting and Wick Verification because the payment was made after January 3, 2020. The Master Chart treated all closed invoices for non-contract equipment by adding the value to the payment total to the value of goods received so as to show complete correspondence to Wick's Verification.

II. Conclusion

The completed accounting of payments and shipments shows that in total, PumpWorks paid $1,197,454.40 to PeopleFlo and this number is verified by the work of Giessing (Ex. 15A) and Mr. Wick (Ex. 16E). Based on the PeopleFlo invoices and packing slips produced in discovery, the value of all goods, MCUs and additional equipment is $507, 250.50. PumpWorks requests that judgment be entered in the amount of $690,203.90 with interest to be applied at 5% per annum from May 1, 2020.

Date: August 15, 2025

Respectfully submitted,

**PUMPWORKS, LLC**

By: /s/ Monica L. Thompson

Monica L. Thompson (ARDC No. 6181455)
mthompson@tottislaw.com
Keith Stolte (ARDC No. 6244848)
kstolte@tottislaw.com
**TOTTISLAW**
401 N. Michigan, Suite 530
Chicago, IL 60611

13

Tel: (312) 527-1400
Fax: (312) 589-7192

*Attorneys for PumpWorks, LLC*