# **EXHIBIT 14**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEOPLEFLO MANUFACTURING, INC., | |
| Plaintiff, | Case No. 1: 20-CV-03642 |
| v. | Honorable Manish S. Shah |
| SUNDYNE, LLC; ACCUDYNE INDUSTRIES, LLC; DXP ENTERPRISES, INC.; and PUMPWORKS, LLC, | Magistrate Judge Young B. Kim |
| Defendants. | |

**PLAINTIFF PEOPLEFLO MANUFACTURING, INC.'S RESPONSES TO DEFENDANT PUMPWORKS LLC'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO <u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Pursuant to Rule 56.1(e) of the Local Rules for the Northern District of Illinois, Plaintiff PeopleFlo Manufacturing, Inc. ("PeopleFlo") submits the following responses to Defendants PumpWorks LLC's Statement of Additional Undisputed Facts in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment (Dkts. 350, 353) ("RPWSOF"):

<u>**INITIAL STANDING OBJECTION**</u>

PeopleFlo makes a standing objection to PumpWorks' "Statement of Additional Facts." The Court set a deadline of April 18, 2023 to file any motions for summary judgment. Dkts. 320, 322. On April 18, 2023, PeopleFlo timely filed it Motion for Summary Judgment along with 49-facts in support in its Statement of Undisputed Facts. Dkts. 343, 344. PumpWorks, after initially stating that it planned to file a Motion for Summary Judgment, Dkt. No. 312, later changed course and elected not to do so. After PeopleFlo timely filed its Motion for Summary Judgment,

1

consistent with what is reflected in Ex. H to Mr. Maxwell's declaration (Ex. 68); however, PeopleFlo specifically disputes that this message reflects that "Blankemeier again asked me to assist PeopleFlo" as Mr. Maxwell has mischaracterized in his declaration (Ex. 68, ¶ 19(b)). Mr. Maxwell, in his declaration, excised the full extent of Mr. Blankemeier's message to him where Mr. Blankemeier stated he would "*take you [Maxwell] up on your offer* to try and get some additional cash out of the Colorado Project," meaning Mr. Maxwell initiated the idea to get additional cash out of the project, not PeopleFlo. Ex. 68, at Ex. H. By May 2019, Mr. Maxwell knew of and was sympathetic to the amount of money PeopleFlo was spending up front in order to develop and integrate its technology into PumpWorks' PWA product line over the past 14 months, and Mr. Maxwell initiated and approached PeopleFlo telling them to come to him for assistance if they needed further assistance. **Ex. 53, Blankemeier Dep. at 161:12-162:18.**

PeopleFlo admits in part and disputes in part the factual statements asserted in Paragraph 4(e). PeopleFlo admits that Mr. Blankemeier sent Mr. Maxwell another text message on May 13, 2019. **Ex. 68, at Ex. I**. PeopleFlo disputes that it "requested" anything. As indicated by PeopleFlo's two messages from that day PumpWorks (Mr. Maxwell) had offered to provide assistance to PeopleFlo, and Mr. Blankemeier's text message presented a "suggestion" to Mr. Maxwell. *Id.* PeopleFlo did not request any acceleration of any Phase of the DSA, and did not even mention the DSA, and therefore disputes those factual statements. *Id.* PeopleFlo admits that it suggested that PumpWorks order 200 Group 1 MCUs with 75% prepayment. *Id.* PumpWorks ultimately agreed to a 90% prepayment, which Mr. Maxwell agreed to pay with no written amendment or modification to the DSA. **Ex. 62, Maxwell Dep. at 370:23-371:17.**

5. By August 20, 2019, PumpWorks had submitted stock purchase orders for MCUs in excess of the number of units required under the DSA and made larger payments than required for these orders. Specifically:

> a. PumpWorks submitted Purchase Order No. 4744 on April 4, 2018 for 100 Group 2, low torque MCUs and paid $165,000 (50%) as specified in the DSA. Ex. 67, Giessing Decl. ¶¶ 30-31.

13

    b. PumpWorks submitted Purchase Order No. 5263 on July 6, 2018 for 100 Group 2 high torque MCUs and paid $198,000 (50%) as specified in the DSA. Ex 67, Giessing Decl. 31 and Exs C, D & E thereto; Ex. 63, Shafer Dep. 135:7-141:23; Ex. 88.

    c. On February 11, 2019, PumpWorks paid $260,040 as an additional prepayment of 40% raising the prepayments for all undelivered MCUs to 90% Ex. 67, Giessing Decl. ¶ 32.

    d. PumpWorks submitted PO No. 7024 on May 22, 2019 (8 months before it was due) for 200 Group 2 (100 high and 100 low torque) MCUs and paid $283,800 (50%) on May 24, 2019 (though the DSA only required a 25% payment). Id. at ¶ 33 and Exs. C and F thereto.

    e. On August 20, 2019, PumpWorks paid $227,040, increasing the prepayment for the third order of MCUs by an additional 40% (raising the prepayment amount to 90% of the order). Ex. 67, Giessing Decl. ¶ 33; Ex. 63, Shafer Dep. 135:7-141:23; Ex. 88; Ex. 68, Maxwell Decl. ¶ 20, Ex. 53, Blankemeier Dep. at 157:20-160:3.

**RESPONSE:** PeopleFlo objects to Paragraph 5. *See* **Initial Standing Objection, RPWSOF at pp. 1-2.** Without waiving its objection, PeopleFlo admits in part and disputes in part the numerous factual statements asserted in Paragraph 5. PeopleFlo admits that by August 20, 2019 PumpWorks had made larger downpayments on MCUs than was required by PumpWorks under the DSA. PeopleFlo disputes that it had made purchases in "excess number of units required under the DSA." PumpWorks was required to purchase a minimum of 400 MCUs under the Pre-Phase I and Phase I phases of the Agreement, which is how many it ordered during those phases. **Ex. 1, ¶ 2**.

    PeopleFlo objects in part and admits in part the factual statements asserted in Paragraph 5, subparagraph (a). PeopleFlo objects to the admissibility of Ex. C to Mr. Giessing's declaration (Ex. 67, ¶¶ 30-31) for the reasons stated below. *See infra* **RPWSOF ¶ 6**. PeopleFlo further objects

14

to the admissibility and authenticity of the versions of the Purchase Orders cited as Exhibits D and E to Mr. Giessing's declaration (Ex. 67, ¶¶ 30-31) as those are draft, unsigned purchase orders and were neither executed by PeopleFlo or by an authorized representative of PumpWorks. PeopleFlo admits that on or about April 4, 2018 PumpWorks did submit a Purchase Order to PeopleFlo for 100 Group 2, low torque MCUs and around that time paid PeopleFlo $165,000 in conjunction with that order.

    PeopleFlo objects in part and admits in part the factual statements asserted in Paragraph 5, subparagraph (b). PeopleFlo objects to the admissibility of Ex. C to Mr. Giessing's declaration (Ex. 67, ¶ 31) for the reasons stated below. *See infra* **RPWSOF ¶ 6**. PeopleFlo further objects to the admissibility and authenticity of the versions of the Purchase Orders cited as Exhibits D and E to Mr. Giessing's declaration (Ex. 67, ¶ 31) as those are draft, unsigned purchase orders and were neither executed by PeopleFlo or by an authorized representative of PumpWorks. PeopleFlo admits that on or about July 6, 2018 PumpWorks did submit a Purchase Order to PeopleFlo for 100 Group 2, high torque MCUs and around that time paid PeopleFlo $198,000 in conjunction with that order.

    PeopleFlo admits the factual statement asserted in Paragraph 5, subparagraph (c).

    PeopleFlo objects in part, admits in part and disputes in part the factual statements asserted in Paragraph 5, subparagraph (d). PeopleFlo objects to the admissibility of Ex. C to Mr. Giessing's declaration (Ex. 67, ¶ 33) for the reasons stated below. *See infra* **RPWSOF ¶ 6**. PeopleFlo further objects to the admissibility and authenticity of the version of the Purchase Order cited as Exhibit F to Mr. Giessing's declaration (Ex. 67, ¶ 33) as it is a draft, unsigned purchase order, which was neither executed by PeopleFlo or by an authorized representative of PumpWorks. PeopleFlo disputes that PumpWorks made a purchase order for 200 Group 2 MCUs in May 2019. PeopleFlo admits that on or about May 22, 2019 did submit a Purchase Order to PeopleFlo for 200 Group 1 MCUs and around that time paid PeopleFlo $283,800 in conjunction with that order.

    PeopleFlo objects in part and admits in part the factual statements asserted in Paragraph 5, subparagraph (e). PeopleFlo objects to the admissibility of Ex. C to Mr. Giessing's declaration

15

(Ex. 67, ¶ 33) for the reasons stated below. *See infra* **RPWSOF ¶ 6**. PeopleFlo further objects to the admissibility and authenticity of the version of the Purchase Order cited as Exhibit F to Mr. Giessing's declaration (Ex. 67, ¶ 33) as it is a draft, unsigned purchase order, which was neither executed by PeopleFlo or by an authorized representative of PumpWorks. PeopleFlo admits the remaining factual statements asserted in Paragraph 5, subparagraph (e).

6. PeopleFlo owes PumpWorks $690,203.90.

    a. PeopleFlo only shipped 136 of the 400 ordered MCUs but retained the prepayments for the 264 undelivered MCUs. Ex 67, Giessing Decl. ¶¶ 35 & 36 and Ex. C thereto; Ex. 63, Shafer Dep. 141:24-146:7, 181:10-182:5.

    b. PeopleFlo manufactured and delivered only 63 MCUs from the first order, 27, MCUs from the second order and 46 MCUs from the third order, for a total of 136 MCUs of the 400 PumpWorks ordered. Ex. 67, Giessing Decl. ¶ 35 and Ex. C thereto.

    c. All invoices submitted by PeopleFlo for the additional 10% of purchase price on shipped MCUs and other miscellaneous items have been paid by PumpWorks. PeopleFlo admits that it owes PumpWorks about $700,000 in prepayments PumpWorks made for MCUs not delivered. Ex. 55, PeopleFlo 30(b)(6) Dep. (Dec. 20, 2022) at 20:20-22:4.

    d. The net value of the prepayments retained by PeopleFlo without performance minus the outstanding valid invoices for miscellaneous charges from PeopleFlo for items outside of the three minimum orders is $690,203.90. Ex. 67, Giessing Decl. ¶ 37 and Ex. C thereto.

**RESPONSE:** PeopleFlo objects to Paragraph 6. *See* **Initial Standing Objection, RPWSOF at pp. 1-2.** PeopleFlo further objects to Paragraph 6, and Paragraph 6, subparagraphs (a)-(d), as the factual evidence relied upon in the form of the opinions of Skip Giessing via his declaration as well as his purported mathematical computations, and improper methodology he employed to arrive at his conclusion and calculation of "the amount of money PeopleFlo owes PumpWorks,"

16

(Ex. 67, ¶¶ 35-37, Ex. C) constitutes premature, and inadmissible expert opinion testimony in violation of the Court's order barring Defendants from introducing expert opinions or testimony in support of their summary judgment motions. Dkt. 315 ("Those parties filing motions for summary judgment are barred from offering expert opinions in support of their motion"). Defendants, including PumpWorks, moved the court to stay expert discovery so that they could be permitted to file their respective summary judgment briefs claiming that "requiring the parties to engage in the retention, disclosure and depositions of experts prior to seeking summary judgment is an unnecessary expense and delay, and runs counter to the interests of judicial economy." Dkt. 312. PumpWorks, for its part, initially indicated to the Court of its plan bring a summary judgment motion on its counterclaim, which, according to PumpWorks, would "impact any [future] damage analysis done in this case." *Id*. In response to the Defendants' joint motion, the Court expressed surprise that none of the Defendants had retained expert witnesses given that expert disclosures were only two weeks away but agreed with Defendants' position only if "the expert opinions to be disclosed [after summary judgment] are solely about damages." The Court subsequently ordered the parties to submit a joint status report, warning that multiple rounds of summary judgment motions would be disfavored. Dkt. 318. In the joint status report, PumpWorks backtracked and informed the Court that it would not file a motion for summary judgment on the breach of contract claims because it would "not be ripe for determination until after expert discovery." Dkt. 319, at 2-3. PumpWorks has disregarded the Court's order, changed its position multiple times, and now improperly seeks to admit proposed expert opinion of its own witness on the issue of damages, using improper and flawed methodology, who reaches a damages conclusion and calculation without any consideration of the abundance of evidence in the record evidencing the vast amount of damage that PumpWorks has caused to PeopleFlo. To the extent the Court is inclined to consider Mr. Giessing's opinions in ruling on PumpWorks' summary judgment motion, PeopleFlo reserves its right to depose and cross-examine Mr. Giessing on his opinions which have never previously been disclosed to PeopleFlo.

17

Without waiving its objections, PeopleFlo disputes the numerous factual statements, and inadmissible expert opinions, asserted in Paragraph 6. PeopleFlo specifically disputes that it "owes PumpWorks $690,203.90" as opined by Mr. Giessing. PumpWorks has caused PeopleFlo to suffer damages in excess of $25 million (not including the additional $1.5 million in out-of-pocket losses PeopleFlo has suffered), and exclusive of attorneys' fees and costs, and punitive and exemplary damages, which will be the subject of expert opinion to be disclosed in accordance with the Court's future scheduling orders. The factual support underpinning these calculations have been the subject of deposition testimony, and there is no evidence cited in Paragraph 6 to rebut those damages (including in Mr. Giessing's expert opinion), including the Defendants' valuations, forecasts, and expected sales volumes associated with the marketing of PeopleFlo's technology prior to their engaging in the misconduct at issue in this case, including Sundyne's and Accudyne's admissions regarding valuation of PeopleFlo's technology, if brought to market, at ███████ in 2017 discounted to present cash value. *See, e.g.,* **Ex. 106, Dep. Ex. 561, at pp. 18-19** (PeopleFlo Amended Rule 26 Disclosures); **Ex. 105, Dep Ex. 564, PeopleFlo Outline to PumpWorks and DXP Rule 30(b)(6) Topic 7, at pp. 6-9; Ex. 55, PeopleFlo 30(b)(6) Dep. at 37:6-38:1; 42:9-18; 78:24-81:2; 82:3-85:23; 88:19-90:6; 163:11-165:5; 167:12-24; 169:4-15; 176:21-177:23; Ex. 107, Johansson Dep. (Jul. 13, 2022 Sundyne 30(b)(6)) at 188:4-189:19 (excerpts).**

With respect to the factual statements asserted in Paragraph 6, subsection (a)-(b) PeopleFlo disputes that it only shipped 136 MCUs to PumpWorks. PeopleFlo shipped 148 MCUs to PumpWorks. **Ex. 101, Blankemeier Decl. ¶ 9**. Mr. Giessing's conclusions and calculations are further contradicted by PumpWorks' (erroneous) interrogatory responses (which Mr. Giessing himself signed under oath) in which he verified on behalf of PumpWorks that PeopleFlo had shipped 148 MCUs to PumpWorks. **Ex. 108, PumpWorks Compr. Suppl. Response to PeopleFlo Interrog. No. 14, pp. 65-74, at p. 67** (PeopleFlo shipped 148 MCUs to PumpWorks).

With respect to the factual statements asserted in Paragraph 6, subsection (c), PeopleFlo disputes that all invoices on shipped MCU's and other "miscellaneous items" have been paid by PumpWorks. PumpWorks still owes PeopleFlo approximately $69,997 in unpaid invoices (prior

to interest), which have not been reimbursed. **Ex. 104, PeopleFlo Supp. Obj. and Ans. to PumpWorks Interrog. No. 1, at p. 3**; **Ex. 109, PEOPLEFLO 3702; Ex. 110, PEOPLEFLO 3707-08; Ex. 111, PEOPLEFLO 3751-53; Ex. 112, PEOPLEFLO 3977-3998; Ex. 113, PEOPLEFLO 4008-18; Ex. 55, PeopleFlo 30(b)(6) (Dec. 20, 2022) at 13:23-14:4; 19:19-20:19; 22:6-22.** PeopleFlo is unclear as to what "miscellaneous items" Mr. Giessing is referring to in his "expert" analysis, and further objects to the admissibility of his conclusions and reserves the right to depose Mr. Giessing relating to his conclusions before it admits or disputes that portion of PumpWorks' factual assertion. PeopleFlo admits that it has retained approximately $700,000 in prepayments for MCU's, but expressly disputes that it "owes" PumpWorks money and the portions of the testimony cited by PumpWorks do not support such a conclusion—PeopleFlo testified that the damages inflicted by PumpWorks on PeopleFlo "is far above" those prepayment amounts. **Ex. 55, PeopleFlo 30(b)(6) (Dec. 20, 2022) at 21:24-22:4.**

For the same reasons stated above, PeopleFlo objects to and disputes the expert conclusions reached by Mr. Giessing as reflected in Paragraph 6(d).

**PeopleFlo fails to reasonably demonstrate the willingness or ability to make MCUs**

7. While PeopleFlo had open, unfulfilled orders for 264 MCUs (Ex. 67, Giessing Decl. ¶¶ 36, 91) PeopleFlo completely stopped making MCUs after its last shipment on April 17, 2020 and shortly afterward, both employees who made the MCUs left and were not replaced.

    a. Blankemeier, PeopleFlo's President, told Shafer not to deliver any more MCUs.

> Q.· ·So, again, my question, in April of 2020, why didn't you schedule production or the delivery of MCUs?· ·
>
> A.· ·Bill instructed me to not deliver at that time.
>
> Ex. 63, Shafer Dep. at 180: 181

    And Blankemeier testified:

> Q.· ·I don't think that -- I understand your concerns being in a limbo land, but my question is:· Are you performing it today?· Are you making MCUs?· · ·
>
> A.· ·Are we making MCUs today?· · ·

19