IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEOPLEFLO MANUFACTURING, INC., | |
| Plaintiff, | Case No. 1: 20-CV-03642 |
| v. | Honorable Manish S. Shah |
| SUNDYNE, LLC; ACCUDYNE INDUSTRIES, LLC; DXP ENTERPRISES, INC.; and PUMPWORKS, LLC, | Magistrate Judge Young B. Kim |
| Defendants. | |

**PLAINTIFF PEOPLEFLO MANUFACTURING, INC.'S OPPOSITION TO MEMORANDUM IN SUPPORT OF PUMPWORKS LLC'S PROVE UP OF DAMAGES**

PeopleFlo Manufacturing, Inc. ("PeopleFlo"), through its counsel, submits this opposition to Defendant PumpWorks LLC's ("PumpWorks") Memorandum in Support of Prove Up of Damages (the "Memo"). Dkt 471. PumpWorks' Memo (and its money damages claim) should be denied for three independent reasons: (1) it seeks relief contrary to the Development and Supply Agreement (the ("Agreement") considering that PumpWorks previously elected to pursue and litigate its **sole remedy** (the Manufacturing License); (2) it lacks sufficient foundation (indeed, PumpWorks' two declarants, neither of whom are PumpWorks' employees, disagree on the amount paid to PeopleFlo among other deficiencies); and (3) it fails to address the full value PumpWorks received from all deliveries (148 MCUs plus other equipment and services) provided by PeopleFlo, the amount paid to PeopleFlo, and certain unpaid invoices.  In the alternative, an evidentiary hearing should be set for any remaining claims (that are not barred due to PumpWorks' lack of proof in its Memo) to address the matters set forth in the Memo and herein.  PumpWorks also fails to demonstrate any basis for prejudgment interest, which claim also should be denied.

1

I.  **PumpWorks Cannot Change Its "Sole Remedy" After Years of Litigation.**

Section 3 of the Agreement expressly states:

> If at any time during any phase of this Agreement, PeopleFlo is unwilling or unable to manufacture MCUs in sufficient quantities to meet PumpWorks' reasonable orders, PumpWorks, after ninety (90) days written notice and provided PeopleFlo has failed to reasonably demonstrate that is willing and able to manufacture such MCUs within such ninety (90) day period, can, **as its sole remedy**, immediately purchase the Manufacturing License for $1.00 and this Agreement shall terminate.

Memo Ex. 1 ¶ 3 (emphasis added). Here, PumpWorks bound itself to its sole remedy (the Manufacturing License) in 2020 when it sent $1.00 to PeopleFlo. PumpWorks then specifically pled this Section 3 claim in its Affirmatives Defenses and in its Counterclaim, contending that it was entitled to the Manufacturing License and to treat the Agreement as terminated. *See, e.g.,* Dkt 75 at 39 ¶¶ 21-24 (Affirmative Defenses); Am. Counterclaim ¶¶ 28-34, 38-44 and prayer for relief ¶(e). PumpWorks litigated this Section 3 sole remedy for years in this matter including on the very first page of its Cross-Motion for Summary Judgment. *See, e.g.,* Dkt. 347 at 1; Dkt. 360 ¶¶ 11-14. As expressly stated in the Agreement, the Manufacturing License is PumpWorks' **sole remedy**. There is no language in the Agreement that allows PumpWorks to elect its remedy,[1] much less to litigate (at great expense) for years and then to say never mind. PumpWorks made a knowing decision to pursue its **sole remedy**, which bars its efforts to seek money damages for the same issue – the manufacture of MCUs.

It is black letter law that parties are bound by the plain terms of the contracts that they sign. *Rosin v. First Bank of Oak Park*, 126 Ill. App. 3d 230, 234 (1984). No ambiguity has been claimed relating to the sole remedy language. Consistent with these general principles, Seventh Circuit and Illinois case law further confirm the application of this sole remedy language. For example,

---

[1] The parties use the term "elect" in other circumstances in the Agreement, such as ¶ 9(c)(i), but did not include any election of remedies language in the Agreement. Thus, an election of remedies term cannot be added to the Agreement now.

in *Matter of Witte*, 841 F.2d 804 (7th Cir. 1988), the Seventh Circuit held that repossession of real estate, pursuant to contract allowing repossession with retention of any installment already made as liquidated damages upon default, constituted an election of remedies which precluded the vendor from recovering on judgment for damages entered after previous default. Paragraph 11 of the pertinent contract provided that in the event of a breach or default by the vendee, the vendors had the option to declare the contract forfeited and to retake possession of the premises while retaining any installment payments already made as liquidated damages in full satisfaction of any and all damages sustained. The Seventh Circuit held that "the parties' own agreement contemplates that a repossession of the premises operates as a declaration that the parties' contract is terminated" and because of the termination of all previously existing contract rights, "a subsequent suit for damages by vendor is foreclosed by the doctrine of election of remedies." *Id.* at 807. The court reasoned that "forfeiture of an installment contract for the sale of real estate is an act disaffirming the contract; an action for damages, however, treats the contract as if it were still in force. These two actions are necessarily inconsistent." *Id.*

Here, the Agreement language is even clearer. The Agreement specifies that the Manufacturing License is PumpWorks' **sole remedy**. PumpWorks took action on that language, including the payment of $1.00 (with a claim that the Agreement was then terminated) and in this litigation. PumpWorks is bound by the sole remedy language that it agreed to in the Agreement. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 839 (2002) (in contract with "sole" remedy, "[o]nce made and agreed upon, this remedy provision is binding on the parties and will be recognized and enforced by our courts") (citing cases); *Cala v. Gerami*, 484 N.E.2d 1199, 1202 (Ill. App. 1985) (holding that vendor under an installment contract cannot ignore the remedy in the contract); *see Essington v. Parish*, 164 F.2d 725, 730 (7th Cir. 1947) ("If he has voluntarily

chosen and carried into effect an appropriate remedy with knowledge of the facts and his rights, he will not, in general, be allowed to resort afterward to an inconsistent remedy, which would involve a contradiction of the grounds upon which he before proceeded.") PumpWorks' claim for money damages is barred.

**II.     The Memo And Its Exhibits Lack Foundation Including Its Reliance On Solely DXP Witnesses And An Unidentified DXP Employee.**

Even if PumpWorks could change its sole remedy, the Memo fails for other independent reasons. For starters, PumpWorks fails to provide any evidence from a PumpWorks' employee. Instead, it turns to two DXP employees -- Skip Giessing and Stephen Wick (who in turn relies on another unidentified DXP employee) -- to make its claim. Neither individual provides sufficient foundation for their allegations, and as demonstrated further in section III, PumpWorks' two witnesses (Giessing and Wick) cannot even agree among themselves on the numbers.

There are numerous deficiencies with PumpWorks' reliance on Giessing. In addition to the fact that he is not a PumpWorks' employee, and that he fails to identify any foundation for the statements in his declaration, his declaration submitted with the Memo (1) is not signed or signed under penalty of perjury; (2) fails to provide a statement that the documents referenced therein are business records or were prepared in the regular course of business; (3) contradicts prior judicial admissions and verified interrogatory answers from PumpWorks as to the number of MCU's delivered[2] (*see infra* § III); and (4) contradicts PumpWorks' claims in the Memo[3] (*see infra* § III).

There also are numerous deficiencies with PumpWorks' reliance on Wick. In addition to the fact that he is not a PumpWorks' employee, and that he fails to identify any foundation for the

---

[2] In ¶ 36, Giessing alleges the delivery of 136 MCUs, and then counts only 113 MCUs (63 + 1 + 27 + 22) in ¶ 37, which contradicts PumpWorks' previous admission that 148 MCUs were delivered. *See infra* § III.

[3] In ¶ 37, Giessing alleged that the value of goods delivered by PeopleFlo is $478,768.50, but in the Memo, PumpWorks now admits the figure of at least $507,250.50. S*ee infra* § III.

4

statements in his declaration, Wick also contradicts prior admissions and statements by PumpWorks. *See infra* § III.  Moreover, these deficiencies are exacerbated by the fact that PumpWorks failed to list Wick as a witness or person with knowledge in its Initial Disclosures (or amendments thereto) or in its Interrogatory responses.  These deficiencies are further aggravated by Wick's reliance on another unidentified DXP employee (¶ 3) and attachment of new documents (Ex. 16Ai, 16B and 16D) that were not produced in litigation including numerous payments (in 16Ai and 16B) that do not even reference PeopleFlo (*see infra* at 6).  Due to PumpWorks' failure to disclose Mr. Wick or these documents in discovery, PeopleFlo had no opportunity to depose Mr. Wick or the unidentified employee, or to address the numerous unresolved questions presented by the documents that PumpWorks failed to produce during discovery.

For these reasons alone, PumpWorks' claim should be denied for lack of foundation and its own internal inconsistencies.

### III. The Memo Fails To Address The Value Received From The 148 MCUs Delivered By PeopleFlo And To Demonstrate Payment Of All Invoices From PeopleFlo.

PumpWorks also fails to address two further deficiencies that undercut its Memo:

1. PumpWorks fails to address the correct number (148) of MCUs that it received from PeopleFlo and, thus, the full value that PumpWorks received.

2. PumpWorks provides inconsistent and unsupported figures for the amounts paid to PeopleFlo, and then, fails to address certain PeopleFlo invoices that remain unpaid.

Starting with the value that PumpWorks received, PumpWorks previously admitted that it received 148 MCUs in its pleadings.  Dkt. 75 at 38-39 ¶¶ 14, 20 (Affirmative Defenses) and Countercl. ¶ 28.[4]  PumpWorks made this same admission in its sworn interrogatory responses. Ex. 1 at 67 (excerpt highlighted).  PeopleFlo also provides affirmative evidence that it shipped 148

---

[4] PumpWorks include two different paragraphs numbered 28 – this reference is to the first paragraph 28.

MCUs to PumpWorks. Ex. 2 ¶ 3. In its Memo, however, PumpWorks only provides the value for 136 MCUs (per Memo Ex. 15 ¶ 36 and Ex. 17 at row 5, columns N-O) that it then deducts in part from its claimed damages. PumpWorks fails to identify the 136 MCUs that it counts in this regard. By omitting 12 additional MCUs that were delivered (by PumpWorks' own admission), PumpWorks omits at least $50,434 in additional value for the twelve additional MCUs that it received including as listed in lines 91, 97, 110, 123, 136 and 142 of Exhibit 17.[5] Ex. 2 ¶ 3.

Separate from this deficiency, PumpWorks fails to support the number that it contends is the value received. Wick fails to address this topic entirely. Giessing, again based on the incorrect number of 136 MCUs, states a value received of $478,768.50, but with no evidentiary cites. Memo. Ex. 16 ¶ 37. In the Memo, contradicting Giessing, PumpWorks alleges a different number of $507,250.50 for value received, Memo at 13, but again with no evidentiary cites. Considering its own inconsistencies, and lack of support, PumpWorks has failed to provide sufficient evidence of this aspect of its claimed damages and its claim should be denied. Moreover, this number should be increased to incorporate at least the $50,434 addressed in the paragraph above.

Turning to payments made, PumpWorks' Memo again fails to support its math (including another disagreement between its two witnesses). Giessing contends $1,168,972.40 was paid. Memo Ex. 15 ¶ 37. Wick, in contrast, contends that $1,197,454.50 was paid. Memo Ex. 16 ¶ 10. For his new number, Wick relies on numerous unproduced bank statements that do not even reference PeopleFlo by name, *see* Memo Ex. 16B (472-25) at pp. 16, 21, 27 and 47, which total $360,980.[6] PumpWorks fails to demonstrate that these payments, which do not even mention PeopleFlo, were paid to PeopleFlo. This amount should be deducted from PumpWorks' claim also.

---

[5] $7,600 + $3,300 + $4,290 + $6,600 + $2,970 + $10,824 + $17,820 = $50,434.

[6] $6,600 (page 16) + $25,700 (page 21) + $94,370 (page 27) plus $7,270 (also page 27) + $227,040 (page 47) = $360,980.

6

In addition to these discrepancies, and PumpWorks' failure to present evidence for its claim, PumpWorks also fails to fully address additional PeopleFlo unpaid invoices. For example, PumpWorks still owes PeopleFlo approximately $69,997.50 in unpaid invoices that were expressly due in 2019 and 2020, which have not been reimbursed. Ex. 2 ¶6; *see* Dkt. 77 ¶ 154. PeopleFlo regularly reminded PumpWorks about these past due invoices and their specified due dates. *See, e.g.,* Exs. 7-8. This amount of $69,997.50, plus interest considering the specified due dates for each, also should be deducted from PumpWorks' claim.

For each of these independent reasons, PumpWorks' Memo fails to demonstrate its alleged damages. It has failed in its proof and its claim should be denied, or in the alternative, reduced by the three amounts demonstrated herein (for a total reduction of $481,411.50).

**IV.     PumpWorks Fails to Demonstrate A Basis For Prejudgment Interest.**

PumpWorks also failed to demonstrate any basis for prejudgment interest. In its Memo, PumpWorks makes a bare request for 5% interest as of May 30, 2020. It provides no evidence or legal citation in support of the proposed date and cannot first provide this evidence in its Reply. PumpWorks' failure to provide this evidence in the Memo bars its interest request.

The Agreement does not specify any interest rate. PumpWorks does not claim, much less submit evidence, of any vexatious conduct by PeopleFlo that would allow for interest. To the contrary, it is PumpWorks that now tries to claim a remedy of money damages despite previously and aggressively pursuing its **sole remedy** (the Manufacturing License) in Section 3 of the Agreement.

PumpWorks also fails to provide any evidence that May 30, 2020 is the due date. PumpWorks fails to do so because it previously admitted that there was no due date for the MCUs, that "no delivery schedule was ever agreed on," and that it never claimed a breach relating to

7

delivery of the MCUs. Ex. 3 at 99:22-100:1, 123:19-127:16 (Maxwell, PumpWorks' General Manager); Ex. 4 at 191:14-25 (PumpWorks' 30(b)(6)). PumpWorks' admissions demonstrate that it cannot prove a date due (much less in May 2020), and thus, that its claim for interest should be rejected. *Adams v. Am. Int'l Grp., Inc.*, 339 Ill. App. 3d 669, 674, 791 N.E.2d 26, 30 (2003) (holding that a written instrument must contain a specific due date in order for plaintiff to recover prejudgment interest under the Illinois Interest Act).

PumpWorks also cannot prove any customer impact or damage relating to the absent due date. At all times, PumpWorks had ample inventory of MCUs and PumpWorks even discussed directing PeopleFlo to stop sending MCU's in March 2020, shortly before its proposed interest date of May 2020. Ex. 2 ¶¶ 5-6; Ex. 5 (March 2020: "Can we cut off their [PeopleFlo's] production or does that present a contract risk? They are sending more and more MCUs."); Ex. 6 (excerpt) (December 2019: noting "large [PWA]-SL item receipts from PeopleFlo").

WHEREFORE, PeopleFlo Manufacturing, Inc. respectfully requests that the Court deny all damages and interest requested in PumpWorks' Memo (Dkt. 471), and alternatively, set an evidentiary hearing to address any remaining non-barred matters, and for such other relief as is appropriate under the circumstances.

Dated: September 8, 2025

Respectfully submitted,

/s/ *John T. Ruskusky*
*One of the Attorneys for Peopleflo Manufacturing, Inc.*

John T. Ruskusky
(jtruskusky@nixonpeabody.com)
**Nixon Peabody LLP**
70 West Madison Street, Suite 5200
Chicago, IL 60602
Telephone: (312) 977-4400

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 8, 2025, a copy of the foregoing was served on all counsel of record via electronic case filing procedures.

/s/ *John T. Ruskusky*