**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PEOPLEFLO MANUFACTURING, INC.,

Plaintiff,

v.

SUNDYNE, LLC, DXP ENTERPRISES,
INC., PUMPWORKS, LLC, and
ACCUDYNE INDUSTRIES, INC.,

Defendants.

No. 20 CV 3642

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

I granted PumpWorks, LLC's motion for summary judgment on PeopleFlo Manufacturing's breach of contract claim and on its own breach of contract claim against PeopleFlo. PumpWorks now seeks entry of a final judgment in its favor, with an evidentiary prove-up of its damages. The motion is granted and I award PumpWorks $690,203.90 and prejudgment interest at a rate of five percent per annum, starting May 1, 2020.

## I.     Procedural History

Plaintiff PeopleFlo designed a pump that it believed would revolutionize the "sealless" pump market. Order, *PeopleFlo Mfg., Inc. v. Sundyne, LLC*, No. 20-cv-03642 (N.D. Ill. Mar. 22, 2024), [446] at 1.[1] It contracted with defendant PumpWorks to incorporate the design into one of PumpWorks's existing pumps; defendant DXP

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of filings.

Enterprises, Inc. was to be the major distributor of the pump. [446] at 1. PeopleFlo and PumpWorks's venture went south, and PeopleFlo brought suit alleging that PumpWorks breached its obligations under the contract. [446] at 1. PumpWorks, in turn, accused PeopleFlo of breach of contract for failing to provide the pump pieces for which it had been paid. [446] at 2. I granted summary judgment for PumpWorks on its breach of contract claim, finding that PumpWorks substantially performed under the parties' Development and Supply Agreement (DSA) and PeopleFlo breached by failing to deliver the magnetic coupling units (MCUs) ordered under the contract. [446] at 74–76. I also granted summary judgment for PumpWorks on PeopleFlo's breach of contract claim, finding that the "best efforts" clause of the DSA was not independently enforceable, that PumpWorks did not breach its obligation to maintain a sales organization that actively solicits the sale of PeopleFlo's pumps, that PumpWorks did not breach its obligation to consult regularly with PeopleFlo, and that, even if PeopleFlo could show breach, that it did not prove that it suffered any damages from a breach. [446] at 66–73.

PeopleFlo also brought claims for trade secret misappropriation and breach of contract against Sundyne, LLC and its parent company Accudyne Industries, Inc., tortious interference with contract and with prospective business advantage against Sundyne and DXP, and civil conspiracy against PumpWorks, Sunydne, and DXP. [446] at 1–2. PeopleFlo's tortious interference with contract claims were based on its contract with PumpWorks, and because I found no breach of that contract by

2

PumpWorks, I held that PeopleFlo's claims for tortious interference with contract failed. [446] at 76–77.

For its trade secret misappropriation claims, PeopleFlo asserted trade secrets related to its pump's containment shell, bushings design, and "go-to-market" strategy. [446] at 56–65. I granted summary judgment for defendants on PeopleFlo's claims as to the containment shell and go-to-market strategy, [446] at 59, 65, and denied summary judgment as to its bushings design. [446] at 62–63.

PeopleFlo's breach of contract claims against Accudyne and Sundyne were in relation to mutual nondisclosure agreements between PeopleFlo and each defendant. *See* [446] at 10–13, 65. The breaches of these NDAs were based on the same facts as PeopleFlo's trade secret misappropriation claims. [446] at 65. I denied summary judgment on both claims. [446] at 65.

I also granted summary judgment for Sundyne and DXP on PeopleFlo's tortious interference with prospective business advantage, finding that PeopleFlo could not base its claim on its expectancy of purchases by downstream customers. [446] at 77–78. Finally, I granted summary judgment for Sundyne, DXP, and PumpWorks on PeopleFlo's civil conspiracy claim. Its claim based on DXP and Sundyne's alleged tortious interference with contract or business advantage failed because the underlying tort claims failed. [446] at 79. And I found that there was no evidence that Sundyne, DXP, and PumpWorks worked together to hide Sundyne's misappropriation of PeopleFlo's trade secrets. [446] at 79–80.

3

PeopleFlo's claims against Sundyne and Accudyne for trade secret misappropriation of its bearings design and for breach of contract survived summary judgment are pending for trial. [446] at 63, 65, 80.

## II.     Analysis

### A.     Sole Remedy

PeopleFlo argues that PumpWorks previously elected to pursue and litigate its sole remedy—a claim for injunctive relief under the contract. PumpWorks previously argued that it had satisfied the requirements of Section 3 of the DSA, which gave it the right to purchase the manufacturing license for the MCUs for one dollar and terminate the agreement. [446] at 75. To invoke this remedy, PumpWorks had to show that PeopleFlo was "unwilling or unable to manufacture MCUs in sufficient quantities to meet PumpWorks' reasonable orders," that it sent written notice and demand that PeopleFlo demonstrate it was willing and able to manufacture such MCUs, and that PeopleFlo failed to reasonably demonstrate that it was willing and able to manufacture the MCUs within 90 days of the date of the letter. [446] at 75. I previously found that PumpWorks gave written notice, but that there was a question of fact about whether PeopleFlo's response to PumpWorks's letter provided "reasonably demonstrated assurances" that PeopleFlo was willing to make MCUs. [446] at 75–76. Because there was a question of fact, I found that PumpWorks had not established as a matter of law that it was entitled to the DSA's Section 3 remedy. [446] at 76.

Regardless, I found that the purchase of the manufacturing license for one dollar would be PumpWorks's "sole remedy" to the exclusion of damages *if*

4

*PumpWorks so chose.* [446] at 76. I told PumpWorks that it "must decide whether it wants to pursue its claim for money damages or its claim that it is entitled to injunctive relief under the DSA." [446] at 76.

PumpWorks says that it has consistently sought both money damages and the license. [486] at 3; [23] ¶ 48 (in its counterclaim, PumpWorks alleged it was entitled to "at its election," either money damages or injunctive relief under Section 3 of the DSA); [115] ¶ 59 (same, in answer to PeopleFlo's first amended complaint and counterclaim). It also argues that PeopleFlo has waived any argument that the Section 3 remedy was the only remedy available to PumpWorks. *See* [394] at 19–22 (response to summary judgment discussing PumpWorks's breach of contract claim but not arguing that Section 3 was the sole remedy); [418] (reconsideration motion discussing the DSA but not remedies).

PumpWorks also says that the DSA implicitly provides a choice of remedies: an injunctive remedy as described in Section 3, [472-1] § 3 (¶ 3), and a damages remedy. [472-1] § 3 (¶ 1) ("PeopleFlo further agrees that it will be responsible for any actual, direct damages, claims, liabilities, losses, costs or expenses resulting from, or arising out of PeopleFlo's breach or threatened breach of this paragraph."); § 11 (PeopleFlo's damages from certain breaches are capped at $1,000,000 for each occurrence and $2,000,000 in the aggregate in any 12-month period). It also points out that Section 3 says that PumpWorks "can"—not will or must—take a license as a remedy for a breach.

The language of the DSA provides that PumpWorks "can" take a license as its sole remedy. "Can" is not mandatory. The contract provides for a money-damages option in Section 3 itself, and implicitly in Section 11; PumpWorks could elect to seek money damages. Injunctive relief under Section 3 is the "sole remedy" if elected, to the exclusion of money damages, not the sole remedy for any breach of the DSA. PumpWorks can't have both, but it can elect the injunctive remedy as its sole remedy. PumpWorks has, since its counterclaim, sought both money damages and injunctive relief for its breach of contract claim. It has not waived the issue and has now chosen to pursue money damages instead of injunctive relief. Its claim for money damages is not barred.

### B. Damages

#### 1. *Foundation Challenges*

PeopleFlo argues that PumpWorks's damages analysis relies on employees without a sufficient foundation for their calculations. PumpWorks says its evidence consists of admissible business records. Evidence supporting a motion for summary judgment must be admissible in the same manner as at trial. *Murphy v. Caterpillar Inc.*, 140 F.4th 900, 907 (7th Cir. 2025).[2] To be admissible as a business record, the record must be (a) made at or near the time of the event or condition by someone with knowledge, (b) kept in the course of a regularly conducted business activity, and (c) a regular practice of that activity. Fed. R. Evid. 803(6)(A)–(C). These conditions can be

---

[2] PumpWorks's prove-up is effectively a motion for summary judgment on the damages element of its breach-of-contract claim, and I apply the standards for summary judgment here (namely, whether there is a genuine dispute of material facts and viewing the facts in favor of the nonmovant).

shown by the testimony of a custodian or other qualified witness, or by a certification that complies with Federal Rules of Evidence 902(11) or (12). Fed. R. Evid. 803(6)(D). Finally, the record is only admissible if the opponent does not show that the source of information or the method or the circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6)(E). Generally, "at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial." *Murphy*, 140 F.4th at 908. This is required unless "limited exceptions apply," like where the opposing party has relied on or conceded the accuracy of the records. *Id.*

PumpWorks supports its calculations through an accounting by George Giessing, DXP's Rotating Equipment Division Vice President. [472-16] ¶ 2. He was also the manager of PumpWorks from April 2020 to December 2021. [356] ¶ 11 n.2. Giessing says that the statements in his declaration are based on his own personal knowledge. [472-16] at 2. Giessing bases much of his accounting on a chart prepared by Clark Shafer—PeopleFlo's first employee and Vice President—that is then verified with citations to records (packing slips and invoices) produced in discovery. [472-6]; [472-16] ¶ 37; [472-17].[3] PeopleFlo stipulated to the authenticity of the packing slips and invoices between PumpWorks and PeopleFlo. [486-2]. Because PeopleFlo has conceded the accuracy of the records, which confirm Shafer's accounting, and Giessing's calculations relied on the concededly accurate packing slips and invoices

---

[3] PeopleFlo does not argue that Shafer's accounting was inaccurate.

and PeopleFlo's previous calculations, I find that there is sufficient foundation for Giessing's accounting. *Murphy*, 140 F.4th at 908.

PeopleFlo argues that Giessing's declaration was unsigned and not signed under penalty of perjury. It is clear from the headers on Docket 472-16 that the exhibit is an authentic excerpt of Docket 356, which was signed by Giessing under penalty of perjury. [356] at 36.

PeopleFlo does not argue that the Shafer chart is not an accurate accounting of what PumpWorks paid PeopleFlo or what shipments were made. Shafer's chart showed that as of the end of January 3, 2020, PumpWorks had paid PeopleFlo $1,168,230.00. [472-6] at 4–5. Giessing's accounting and PumpWorks's summary chart show that on January 17, 2020, PumpWorks paid PeopleFlo $1,650.00 on Purchase Order 4744; $8,316.00 on Purchase Order 5263; $1,082.40[4] on Purchase Order 7024 (low torque); $594.00 on Purchase Order 7024 (high torque); $2,676.00 on Purchase Order 7025, $4,290.00 on Purchase Order 7168; $1,046.00 on Purchase Order 7548; $6,600.00 on Purchase Order 7653; and $2,970.00 on Purchase Order 7707. [472-17]; [472-29]. These additional payments added $29,224.40 to Shafer's calculation, for a total of $1,197,454.40.

PeopleFlo does not argue that it did not receive $1,197,454.40 from PumpWorks. Instead, it challenges PumpWorks's proof. PumpWorks submits bank

---

[4] Though the "paid $" column reads $1,082, The value of the shipped goods was $1,082.40 and the balance after payment was "$0.00," so I use $1,082.40. This number is also corroborated in the bank statement reflecting a payment PumpWorks made to PeopleFlo on January 17, 2020. [472-25] at 53.

records showing it paid $29,224.40 in a wire transfer to PeopleFlo on January 17, 2020. [472-25]. PeopleFlo contends that because the bank statements PumpWorks submitted were not produced earlier in litigation and do not reference PeopleFlo, they should be disregarded. But the bank statement for the $29,224.40 wire transfer sent on January 17 does say the wire transfer was sent to PeopleFlo. And even if PumpWorks had not disclosed its bank records to PeopleFlo before this motion, I find any non-disclosure harmless. If PeopleFlo had not received the wire transfer, it could have rebutted PumpWorks's evidence by submitting bank records of its own showing that it did not receive the $29,224.40 in the JPMorgan Chase bank account referenced in PumpWorks's bank records. PeopleFlo has not shown that PumpWorks lacked a foundation for its damages calculation.[5]

### 2. Damage Calculation Challenges

PeopleFlo asserts two more deficiencies in PumpWorks's damages calculation: (1) that PeopleFlo sent 148 MCUs, and PumpWorks did not account for the full value of goods it received from PeopleFlo; and (2) that PumpWorks's figures are inconsistent and unsupported and fail to address PeopleFlo invoices that remain unpaid.

PumpWorks has accounted for all 148 MCUs that PeopleFlo delivered. For purchase orders 4744, 5263, and 7024, PumpWorks's charts show that 63, 27, and 46

---

[5] PeopleFlo also challenges PumpWorks's use of Stephen Wick to prove up damages because he is not a PumpWorks employee and he fails to identify any foundation for the statements in his declaration. It also says PumpWorks failed to list Wick as a witness in its initial disclosures. Wick's declaration and "verification" is not necessary for PumpWorks to prove up its damages, and I do not rely on Wick's accounting in making my decision.

(22 low torque, and 24 high torque) MCUs, respectively, were shipped. [472-29] at 2–3. This totals 136 MCUs. PumpWorks also shows shipments under "none," "verbal," and purchase orders 7168, 7653, 7739, and 7740. A total of 12 MCUs were shipped under those purchase orders (1, 1, 1, 1, 2, and 6, respectively). [472-29] at 4–5. Adding 12 to 136, a total of 148 MCUs were accounted for in the PumpWorks charts. The value of the 136 pumps ordered under the DSA was $445,632.00. The value of the 12 "miscellaneous" MCUs was $50,434.00. [472-29] at 4–5. And PumpWorks also added the value of an additional unit shipped under Purchase Order 4744 that it had not ordered, which adds another $3,300.00 to the total, as well as the $7,884.50 value of four additional orders (7025, 7548, 7707, 7896). [472-29] at 2, 4–5. The total value of all of the goods PumpWorks received is $507,250.50. Subtracting that number from the $1,197,454.40, PeopleFlo owes PumpWorks $690,203.90.

This is the same number that Giessing provides. My calculation above matches Giessing's accounting of damages. Giessing's exclusion of the "miscellaneous" MCUs does not undermine his calculations.

PeopleFlo also argues that the number does not account for $69,997.50 in unpaid invoices. But PumpWorks accounts for the value of all the MCUs that PeopleFlo sent to PumpWorks. *See* [472-29]. The unpaid invoices were for those MCUs. The value of those MCUs is subtracted from the amount that PumpWorks paid PeopleFlo. PumpWorks has credited PeopleFlo for the value of the unpaid invoices. PumpWorks is entitled to damages in the amount of $690,203.90.

### 3. Prejudgment Interest

Finally, PeopleFlo says that PumpWorks is not entitled to prejudgment interest. In a contract dispute, prejudgment interest may be awarded under state law as a matter of statute or contract. *Sterling Nat'l Bank v. Block*, 984 F.3d 1210, 1223 (7th Cir. 2021). The Illinois Interest Act allows for prejudgment interest at a rate of five percent per annum "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing" and for "money withheld by an unreasonable and vexatious delay of payment." 815 ILCS 205/2.[6]

PeopleFlo argues that the DSA does not specify any interest rate. But it did not need to; the statute provides for a rate of five percent per annum. *Id.*

PeopleFlo also contends that PumpWorks does not claim any vexatious conduct by PeopleFlo that would allow for prejudgment interest. But PumpWorks does not need to show that there was unreasonable or vexatious delay of payment; it seeks prejudgment interest under a different statutory provision that applies to interest for money due under an "instrument of writing." *See Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 834 (7th Cir. 2020) (distinguishing between the different statutory provisions under which a litigant may recover prejudgment interest).

PeopleFlo says that PumpWorks fails to provide any evidence that May 30, 2020, was the "due date" for the MCUs, and that a written instrument must contain a specific due date in order for a plaintiff to recover prejudgment interest under the

---

[6] I apply Illinois law because the DSA contains an Illinois choice-of-law provision and the parties apply Illinois law. [472-1] ¶ 12.a. *See also* [446] at 56 n.31; *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995).

11

Illinois Interest Act. It cites *Adams v. Am. Int'l Grp., Inc.*, 339 Ill.App.3d 669, 674 (1st Dist. 2003). But in *Adams*, the Illinois Appellate Court found that there was no specific or "*inherent* date by which the indebtedness created [came] due." *Id.* The time of default of a contract is an "inherent" due date that triggers an entitlement to prejudgment interest. *See PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004) (where the "time of default is clear" the "contract contains an inherent due date").

PeopleFlo agreed that it would be "responsible for any actual, direct damages, claims, liabilities, losses, costs or expenses resulting from, or arising out of PeopleFlo's breach or threatened breach of" Pre-Phase I and Phase I of the contract. [472-1] § 3 (¶ 1). Although the DSA did not set out a delivery schedule, PeopleFlo argued during summary judgment that the parties had agreed that PeopleFlo was to deliver five to six MCUs per week. [446] at 74. I determined that PeopleFlo was "no longer, and has not been for some time, sending five to six MCUs per week to PumpWorks." [446] at 74. After its last shipment on April 17, 2020, PeopleFlo stopped deliveries, was in breach of the DSA, and had defaulted on the contract. [446] at 74. The contract's inherent due date was at the time of default; in this case, after April 2020. [472-1] § 3 (¶ 1). I grant PumpWorks's request for prejudgment interest at a rate of five percent per annum starting May 1, 2020.

### C.   Final Judgment

Under Federal Rule of Civil Procedure 54(b), when an action involves multiple parties, "the court may direct entry of a final judgment as to one or more, but fewer than all … parties only if the court expressly determines that there is no just reason

for the delay." Fed. R. Civ. P. 54(b). To enter a Rule 54(b) final judgment, I must make two determinations: (1) that the order in question was really a "final judgment," and (2) that there is no just reason to delay the appeal of the decided claim. *Rankins v. Sys. Sols. of Ky., LLC*, 40 F.4th 589, 591–92 (7th Cir. 2022).

A judgment is "final" when it "constitutes 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *WEC 98C-3 LLC v. SFA Holdings, Inc.*, 99 F.4th 961, 967 (7th Cir. 2024) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)). I consider whether there is too much factual overlap between the decided claim and the remaining claims to enter a final judgment. *Id.* "Even if two claims arise from the same event or occurrence, they may be separable for Rule 54(b) purposes if they rely on entirely different legal entitlements yielding separate recoveries, rather than different legal theories aimed at the same recovery." *Id.* (quoting *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 464 (7th Cir. 2008)). But if the remaining claims are "intertwined" with the decided claim, meaning their resolution could "'undercut' or otherwise alter the 'final' claim," Rule 54(b) final judgment is inappropriate. *Rankins*, 40 F.4th at 592.

The breach of contract claims between PeopleFlo and PumpWorks are sufficiently separate from the remaining claims such that this award of damages is a final disposition of the breach of contract dispute between PeopleFlo and PumpWorks. PeopleFlo's trade secret misappropriation and breach of contract claims against Sundyne and Accudyne are about a nondisclosure agreement between those

parties and are based on a set of facts that are unrelated to the agreement between PumpWorks and PeopleFlo.

PeopleFlo's claims for tortious interference with prospective business advantage were not based on the relationship between PeopleFlo and PumpWorks in the DSA, and so the tortious interference claim would not undercut or alter my decision on PeopleFlo's and PumpWorks's breach of contract claims. *Rankins*, 40 F.4th at 592.

The civil conspiracy claim against Sundyne, DXP, and PumpWorks based on tortious interference of prospective business advantage and misappropriation of trade secrets is not intertwined with the PumpWorks/PeopleFlo breach of contract claims for the same reasons as the underlying torts are not intertwined.

And although PeopleFlo's tortious interference with contract claim against Sundyne and DXP (and related civil conspiracy claim against Sundyne, DXP, and PumpWorks) is based on its contract with PumpWorks, the facts of the claims do not substantially overlap. [446] at 76–77. The tortious interference with contract claim required that PumpWorks breach its obligations under the DSA. [446] at 76–77. But even if PumpWorks had breached the DSA, because PeopleFlo continued working under the DSA, PumpWorks's breach would not bar its claim against PeopleFlo for its later breach. [446] at 74–75; *PML Development, LLC v. Village of Hawthorn Woods*, 2023 IL 128770, ¶¶ 51–52. Any breach by PumpWorks would not change my analysis of PeopleFlo's breach. The claims "rely on entirely different legal

14

entitlements yielding separate recoveries." *WEC 98C-3 LLC*, 99 F.4th at 967. The claims are not intertwined.

None of the remaining claims are intertwined with PumpWorks's or PeopleFlo's breach of contract claims against each other, and there is no just reason to delay entry of judgment. This case has been pending for nearly six years. PumpWorks says that it will be prejudiced by any further delay, as it believes PeopleFlo has been transferring its assets since summary judgment motions were filed, and based on filings with the Illinois Secretary of State, PeopleFlo has moved its principal place of business to Blankemeier's home address. [450] at 4. I find no just reason to delay the appeal, and the clerk shall enter a final judgment under Rule 54(b).

## III. Conclusion

The clerk shall enter judgment in favor of PumpWorks and against PeopleFlo on the breach of contract claims alleged in Count I of PeopleFlo's Amended Complaint, [77] ¶¶ 144–157, and Counterclaim I of PumpWorks's Counterclaim, [115] ¶¶ 51–60, in the amount of $690,203.90, plus prejudgment interest at a rate of five percent per annum beginning on May 1, 2020.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: April 16, 2026

15